POINDEXTER & ORR LIVE STOCK COMPANY, RESPOND-
ENT, *v.* OREGON SHORT LINE RAILROAD COM-
PANY, APPELLANT.

(No. 2,082.)

(Submitted December 2, 1905.   Decided December 18, 1905.)

*Railroads—Killing Live Stock—Evidence—Motion to Strike—*
*Variance—Instructions.*

Railroads—Killing Live Stock—Evidence—*Res Gestae.*
   1.  In an action against a railroad company for the killing of live
stock, brought under section 951 of the Civil Code, the testimony of a
witness that the section boss showed him where the animal was when
struck, and stated that after it was struck he killed it to end its
sufferings, was not admissible as *res gestae.*

Railroads—Killing Live Stock—Evidence—Motion to Strike.
   2.  Where, in an action against a railroad company for the killing
of live stock, a witness was permitted, without objection, to testify to
certain declarations of a section boss who witnessed the accident, and
counsel for defendant thereupon cross-examined the witness, not-
withstanding the evidence was clearly hearsay, and then for the first
time moved to have it stricken out, the effort to exclude it came too
late, and the district court properly denied the motion.

Railroads—Killing of Live Stock—Pleadings—Proof.
   3.  *Held,* in an action against a railroad company to recover for the
killing of live stock, under Civil Code, section 951, that proof of an
injury to an animal which would inevitably result in its death, sub-
stantially supports an allegation of killing.

Railroads—Killing of Live Stock—Complaint—Proof—Variance.
   4.  The complaint in an action against a railroad company to recover
for cattle killed by it, under section 951 of the Civil Code, alleged that
the company so negligently managed its locomotive and cars as to kill
the animal in question.  The proof showed that while the animal had
been fatally injured, it was actually killed by a section boss in defend-
ant's employ, to end its sufferings.  *Held,* that the defendant not hav-
ing been misled by the variance, and substantial justice having been
done between the parties (Code of Civil Proc., secs. 770, 778), the judg-
ment will not be reversed because of the variance.

Railroads—Killing of Live Stock—Negligence—Instructions.
   5.  An instruction given in an action, brought under section 951 of the
Civil Code, against a railroad company, for the killing of live stock,
to the effect that the law presumed such killing to have been the result
of defendant's negligence, correctly stated the law, even though it ap-
peared that while the animal was fatally injured by the locomotive and
cars of the defendant, the actual killing was done by one of defend-
ant's employees to end its sufferings.  [MR. JUSTICE MILBURN dissent-
ing.]

*Appeal from District Court, Beaverhead County; M. H.*
*Parker, Judge.*

ACTION by the Poindexter & Orr Live Stock Company against the Oregon Short Line Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*Mr. John G. Willis,* for Appellant.

*Mr. H. R. Melton,* and *Mr. J. B. Poindexter,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought under section 951 of the Civil Code, to obtain a judgment for the value of a bull, for that the defendant corporation, operating a railroad within the state of Montana, so negligently managed its locomotive and cars that the same ran against and over said bull and killed and destroyed the same, to the damage of plaintiff in the sum of $100. The statute provides: "Sec. 951. Every railroad corporation or company operating any railroad, or branch thereof, within the limits of this state, which shall negligently injure or kill any horse, mare, * * * bull * * * , or any other domestic animal, by running any engine or engines, car or cars, over or against any such animal, shall be liable to the owner of such animal for the damages sustained by such owner by reason thereof * * * ." It further provides that proof of the injury or killing shall be *prima facie* proof of negligence.

At the close of plaintiff's case the defendant moved for a nonsuit on the grounds, (1) that the complaint does not state a cause of action; and (2) that the evidence does not show that the defendant, or any of its servants or employees, did injure or kill the animal in question. The motion being denied, and defendant declining to offer any evidence, the cause was submitted to the jury, which found a verdict for plaintiff. Judgment was entered accordingly. The defendant has appealed from the judgment. Its validity is assailed on three grounds: (1) That the court erred to defendant's prejudice in refusing to strike out certain evidence; (2) in overruling the motion for

nonsuit; and   (3)   in submitting to the jury a certain instruction.

1. One Sprinkle was called as a witness.   He stated, among other things, that shortly after the accident he came to the place where it occurred and found there the section crew; that he saw the animal and knew it to be the property of the plaintiff; that the section boss pointed out to him the place where it was when struck by the train, and told him that after the animal had been struck, he, the section boss, had "knocked him in the head." From other testimony it appears that the animal's back was injured, and that the section crew, being of the opinion that it would die in any event, killed it to end its sufferings.   This evidence was admitted without objection, and the witness was fully cross-examined.   Thereupon a motion was made to strike out the evidence in so far as it detailed the statements made by the section boss, on the ground that it was hearsay and incompetent.

This evidence was clearly incompetent upon any theory.   The declarations of the section boss were not a part of the *res gestae*.   They were not admissible as such under the statute (Code of Civil Procedure, section 3126), for they were not concurrent with the main transaction—the accident—nor did they spring from it as spontaneous, voluntary statements induced by it and explanatory of it.   While the declarations or admissions of an agent are admissible, as against his principal, when made within the scope of his authority and accompanying the act upon which it is sought to charge his principal, after a transaction has been closed, his subsequent declarations are narrative of a past transaction, and are mere hearsay.   (*Ryan* v. *Gilmer*, 2 Mont. 517, 25 Am. Rep. 744; *Hogan* v. *Kelly et al.*, 29 Mont. 485, 75 Pac. 81; *Durkee* v. *Central Pac. Ry. Co.*, 69 Cal. 533, 58 Am. Rep. 562, 11 Pac. 130.)

The declarations under consideration do not even have the merit of being those of an agent who had control or management of the train.   So far as the relation of the second boss to the matter of the running of the train was concerned, he stood as a stranger to the accident in question.   The running of trains

was a matter entirely beyond the scope of his authority. Upon no theory, then, could his declarations be treated in any other light than that of a stranger who witnessed the accident.

But, though this is true, it does not follow that the court erred in refusing to strike out the evidence. Counsel sat by and permitted the evidence to be heard without objection. He cross-examined the witness, though it was apparent from the beginning that his testimony was hearsay. It was also apparent for what purpose it was introduced. Then, for the first time, he endeavored to have it excluded. Had objection been made to its introduction, the court would doubtless have excluded it. As it was, the effort to have it excluded came too late. "The practice, whether in civil or criminal cases, of deliberately permitting evidence to be given without objection in the first instance, and then moving to strike it out on grounds which might readily have been availed of to exclude it when offered, is not to be tolerated." (*People* v. *Long*, 43 Cal. 444. See, also, *People* v. *Samario*, 84 Cal. 484, 24 Pac. 283; *People* v. *Nelson*, 85 Cal. 421, 24 Pac. 1006; *Wheelock* v. *Godfrey*, 100 Cal. 578, 35 Pac. 317.)

Complaint is made that a like error was committed by the court in refusing to strike out testimony of Walter Poindexter to the same or similar declarations of the section boss. The record does not show that any such motion was made.

2. Contention is also made that the complaint does not state a cause of action under the statute. In this contention we think counsel is in error. It states a cause of action under the statute for the negligent killing of an animal. The contention is made, however, that since the allegation of the complaint is, that the defendant killed and destroyed the animal in question, and the evidence tends to show that it was only injured, but that it was killed by the section boss to end its suffering, the court in not sustaining the motion for nonsuit committed error. Contention is also made that the evidence does not show that the injury was done by the engine or cars of the defendant.

It is true that there is a variance between the proof and the allegation in the pleading; but it is manifest that the injury

to the animal was fatal, and that for all practical purposes it was killed. In other words, the proof tends to establish the fact that the killing by the section boss merely hastened what would inevitably have been the ultimate consequence of the injury. Section 770 of the Code of Civil Procedure provides: "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that a party has been misled, the court may order the pleadings to be amended, upon such terms as may be just." Evidently, the defendant was not misled by this variance. Substantial justice was done between the parties, and, in view of the further provision of that Code (section 778), "that the court must, at every stage of an action, disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect," we do not think the judgment should be reversed. The pleadings and proof must correspond; but in view of the provisions of the statute, *supra,* it would seem an exceedingly technical application of this rule to reverse the judgment because of this variance.

Proof of an injury which would inevitably result in death to the animal injured substantially supports an allegation of killing. Though the evidence is not strong—that tending directly to show that the animal was killed by being struck by a train being in part hearsay—yet, assuming, as we have done, that the hearsay portion of it is properly in the case, and that it tends to support the theory that the killing was done by the train and not by other means, it, with this evidence, was sufficient to go to the jury, and the finding of the jury thereon may not be disturbed.

3. The court instructed the jury, in substance, that if the bull was killed in the manner and form alleged in the complaint, the law presumed such killing to have been the result of defendant's negligence. This instruction declares the statutory rule

(Civil Code, section 951). It is argued that, since the proof shows that the killing was actually done by the section boss, the instruction is not applicable to the facts. In view of what has already been said touching the probative effect of the evidence under the allegations of the complaint, it is apparent that this contention must be held to be without merit.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE MILBURN: I dissent. The statute under which this action is brought is special, and a complaint drawn under it must be strictly within its provisions if the plaintiff desires to avail himself of its special benefits. Where words peculiar and essential are used in the statute, the same or words of the same signification must be employed in the pleading. Ordinarily, in a damage suit where negligence must be proven affirmatively, it must be expressly alleged; but in cases under this statute, when an animal is injured or killed because of violent contact with cars or engines, the legislature, with special regard for owners of the animals who cannot expect to find witnesses who saw the accident and who actually know under what circumstances the animal was killed, has provided that negligence will be presumed from the injury or killing by such contact. It was perhaps unnecessary for the legislature to use both words "injure" and "kill," as the word "injure" would have been sufficient to include both ideas; but it has used both words.

The complaint alleges that the animal was "killed and destroyed." The word "destroyed" apparently is another way of trying to say "killed"—that is, it is used tautologically. The animal might be injured and not destroyed, but it could not be killed without being destroyed. The evidence tends to show that the bull was seriously injured, probably fatally; but this is not alleged in the complaint. It was not killed by the railroad. It was killed by a man with a sledge hammer. Killing with a sledge hammer is not killing by contact with railroad rolling stock. The company is not responsible for the acts of the slayer

in the premises; and if it were, this action would not lie under the peculiar statute under such circumstances, because the animal was not killed by contact with the rolling stock. A suit of a different character might be brought and maintained. The plaintiff could have amended its complaint in the court below to comport with the evidence. It did not offer to amend. There was not any suggestion of an amendment. Plaintiff does not appear in this court by brief or otherwise, and I do not think that this court ought of its own motion to violate the rules of the English language for plaintiff's benefit.

In some states in case of railroad accidents, where some people are killed and others seriously injured, it is provided by law that in case of the killing of a passenger the company may not be mulcted in damages in a sum exceeding $5,000, leaving it to the court and jury, in suits for damages for injuries not resulting in death, to assess against the company such compensatory and punitive damages as in reason and law should be found, in sums often exceeding $5,000. If a passenger receive injuries which in all probability would soon result in his death, and some person should shoot him dead in order to put him out of his misery, would any court for one moment listen to the plea of the railroad company that it had killed the passenger and, therefore, ought not to be mulcted in a sum exceeding $5,000, if sued for damages for the injury, the patient lingering some weeks before his tragic killing by a stranger? I think not.

I do not think that the statutes referred to in the opinion of the majority of the court were intended by the legislature to be invoked by us to cure in this court mistakes, errors and omissions which the plaintiff, upon simple suggestion to the court below, could have cured by inserting in his pleading words telling what was meant to be alleged. I think the holding in the majority opinion is a bad precedent, to be followed, possibly, in cases of much more importance. We should, in my opinion, decide this case upon the record as made by plaintiff below, and not upon what it should have been, but was not.

Rehearing denied January 20, 1906.