No. 04-748

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 26

_____

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

JOSEPH PAONI,

      Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DC 2003-209,
The Honorable James A. Haynes, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Matthew M. Stevenson (argued) Attorney at Law, Missoula, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; John Paulson (argued), Assistant Attorney General, Helena, Montana

        George Corn, Ravalli County Attorney; T. Geoffrey Mahar, Deputy County Attorney, Hamilton, Montana

_____

Argued:    April 15, 2005
Submitted: October 25, 2005
Decided: February 7, 2006

Filed:

_____
                 Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Joseph Paoni (Joseph) appeals his convictions from the District Court of the Twenty-First Judicial District, Ravalli County, for assault with a weapon, a felony in violation of § 45-5-213(1)(a), MCA; partner-family member assault, a misdemeanor in violation of § 45-5-206(1)(a), MCA; criminal mischief, a misdemeanor in violation of § 45-6-101(1)(a), MCA; and two counts of criminal endangerment, felonies in violation of § 45-5-207(1), MCA.  We affirm.

¶2     Joseph raises the following issues on appeal:

¶3     1. Whether sufficient other evidence supported Joseph's conviction for assault with a weapon even assuming Joseph preserved his *Crawford* issue on appeal.

¶4     2. Whether the District Court abused its discretion by denying Joseph's motion for a mistrial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     Early in the morning of December 29, 2003, after an evening of drinking, Joseph came home and argued with his pregnant girlfriend, Tracyn Elrich (Tracyn).  Joseph struck Tracyn in the face, back, and stomach, pulled her hair, and slammed her head against the wall.  Joseph's brother, David--who along with his wife and daughter, Tiffany Paoni (Tiffany), lived in the same house as Joseph--attempted to break up the fight between Joseph and Tracyn.  The argument between the two brothers escalated until Joseph eventually struck David in the eye with the butt of a rifle.

¶6     Tiffany called 911 and summoned officers to the house, alerting law enforcement that Joseph was drunk and armed with a gun.  David also spoke with the 911 operator and

2

informed her that Joseph had struck him in the face with the gun. He further told the operator that he had disarmed Joseph and locked the rifle in the trunk of his car. David also informed the operator that Joseph was now outside the house and possibly armed with a knife.

¶7 Police officers arrived at the house and arrested Joseph. The State charged Joseph with assault with a weapon, two counts of criminal endangerment, partner-family member assault, and criminal mischief. The State premised the assault with a weapon charge on Joseph striking David in the face with the butt of a rifle.

¶8 David moved with his family, including Tiffany, to Sangamon County, Illinois, before Joseph's trial began. The District Court for the Twenty-First Judicial District, Ravalli County, issued subpoenas for David and Tiffany and the State mailed them to the Sangamon County Sheriff's Office. Nothing in the record indicates that the State or proper authorities presented the subpoena to a Sangamon County court of record, as required by § 46-15-113, MCA. The sheriff in Illinois attempted to serve David by leaving a copy of the subpoena at his abode. Thus, it appears that the Illinois authorities failed to serve the Ravalli County subpoena personally on David, as required by § 46-15-107, MCA. The State admitted that it was unlikely David or Tiffany would show up to testify.

¶9 Joseph moved to dismiss the assault with a weapon count on Sixth Amendment grounds before trial. He argued that the Sixth Amendment guaranteed him the right to confront the witnesses against him, and if David failed to show up for trial he would not have the ability to cross-examine David, examine his motives, or examine his testimony. The District Court denied the motion. Joseph's counsel then informed the court that he would

3

object to any hearsay statements by David as the State offered them at trial. David and Tiffany did not appear at trial.

¶10 The State opened the trial by attributing the following statement to Joseph: "I want the baby dead. I hope the baby dies." Joseph did not object at the time, but instead moved for a mistrial the following day during a conference in chambers based on the State's use of these remarks. Joseph argued that the State's use of Joseph's comment denied him his right to a fair trial. The District Court denied the motion.

¶11 Both the State and Joseph offered into evidence during trial statements made by David. Joseph largely failed to object to the admission of David's hearsay statements. For instance, Deputy Rhodes, one of the officers who arrived on the scene after Tiffany had called 911, testified that David told him that he and Joseph had engaged in a physical scuffle, and that Joseph had caused David's injuries by striking him in the face with the rifle. Joseph made no objection to this testimony.

¶12 The jury found Joseph guilty on all charges. Joseph then filed a Motion for a New Trial and/or Motion for Judgment Notwithstanding the Verdict on the assault with a weapon charge against David and one of the criminal endangerment charges. Joseph argued that the District Court improperly had admitted all of David's hearsay statements in violation of Joseph's Sixth Amendment right of confrontation as expounded in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. The District Court denied the motion and entered a judgment of conviction on all counts. The court sentenced Joseph to 20 years in the Montana State Prison with 5 years suspended. This appeal followed.

## STANDARD OF REVIEW

¶13    We review rulings on the admissibility of evidence under an abuse of discretion standard. *State v. Damon*, 2005 MT 218, ¶ 12, 328 Mont. 276, ¶ 12, 119 P.3d 1194, ¶ 12. We leave determination of the relevancy and the admissibility of evidence to the sound discretion of the trial judge, and we will not overturn it absent a showing of abuse of discretion. *Damon*, ¶ 12. The standard for denial of a motion for a mistrial is whether the district court abused its discretion. *State v. Steele*, 2004 MT 275, ¶ 15, 323 Mont. 204, ¶ 15, 99 P.3d 210, ¶ 15.

## DISCUSSION

¶14    **1. Whether sufficient other evidence supported Joseph's conviction for assault with a weapon even assuming Joseph preserved his *Crawford* issue on appeal.**

¶15    Joseph argues on appeal that the District Court violated his Sixth Amendment right to confront the witnesses against him, as expounded in *Crawford*, when it admitted certain of David's hearsay statements. The State counters that Joseph failed to raise a proper objection at trial and thus waived the right to raise the confrontation clause issue on appeal. Alternatively, the State argues that the District Court correctly admitted David's statements.

¶16    A defendant waives an objection and may not seek appellate review when a defendant fails to make a contemporaneous objection to an alleged error in the trial court. Section 46-20-104(2), MCA; *State v. Olsen*, 2004 MT 158, ¶ 10, 322 Mont. 1, ¶ 10, 92 P.3d 1204, ¶ 10. A defendant does not waive an issue by failing to object at trial, however, when he has filed a motion sufficiently specific to preserve the issue for appeal. *State v. Vukasin*, 2003 MT 230, ¶ 29, 317 Mont. 204, ¶ 29, 75 P.3d 1284, ¶ 29.

5

¶17 Joseph's counsel filed four separate motions in limine regarding various evidentiary issues. Joseph also argued in a separate pretrial motion to dismiss that the court would abrogate Joseph's Sixth Amendment right to confront the witnesses against him if David failed to appear for trial and the court did not dismiss the assault with a weapon charge. The District Court denied the motion at a pretrial conference on the morning of the first day of trial. Shortly thereafter Joseph's counsel informed the court that he would be objecting to any of David's hearsay statements as the State attempted to offer them.

¶18 Throughout the trial, however, Joseph repeatedly failed to object to David's hearsay statements. For instance, the State's first witness, Deputy Rhodes, testified when asked if David told him what caused his black eye that David stated "that the actual weapon striking his face is what caused that, that injury." It was not until Deputy Cashell, another officer present the night of the incident and the second witness to testify, attempted to relay a conversation with David that Joseph objected. The District Court sustained the objection.

¶19 Moreover, Joseph failed to object, on hearsay grounds, to the admission of the recorded 911 conversation between Tiffany, David, and the 911 operator. Joseph initially objected to the tape's admission on the grounds that the tape contained Tiffany's impermissible statements regarding Joseph's prior bad acts, and that the State had failed to provide him with *Just* notice that it would be seeking to use evidence of Joseph's prior bad acts. Judge Haynes opined that the tape was "also riddled with hearsay" and asked Joseph "what's the basis of your objection?" Joseph reiterated that it was the "*Just* notice. This is prior bad acts that would be in front of the jury at this point that officers have actually come out here before." Joseph then requested redaction of the tape so as not to invoke any

6

violation of the *Just* notice requirement.  The court agreed.

¶20    The court then played the redacted tape for the jury, without any objection to David's hearsay statements.  In particular, David told the 911 operator that "when [Joseph] started beatin' [Tracyn] I went up there and tried to break it up and I got hit with the gun and I took the guns away and locked em in my trunk . . . ."  Tiffany also made statements on the 911 tape that support Joseph's conviction for assault with a weapon.  Tiffany told the 911 operator that "my dad just come down here and [Joseph] hit him in the eye with the butt of the gun, it's all purple . . . ."  The 911 operator then asked "[h]e hit your dad in the eye with a gun?" and Tiffany responded "[y]ep, with the butt of it."  Joseph did not object to the admission of these statements.

¶21    Joseph maintains on appeal that he filed a motion in limine to keep David's hearsay statements out of evidence.  None of Joseph's four motions in limine requested, however, the exclusion of David's statements.  The only pretrial motion that Joseph made regarding David's statements was the motion to dismiss the assault with a weapon charge.  Joseph based this motion on the grounds that if David failed to testify and the court did not dismiss the charge, the court would violate Joseph's Sixth Amendment right to confront the witnesses against him.

¶22    A motion to dismiss, like a motion in limine, can be "sufficiently specific to preserve [an] issue for appeal."  *Vukasin*, ¶ 29.   We need not address whether Joseph's pretrial motion to dismiss sufficiently preserved his *Crawford* issue for appeal, however, as the State presented the jury with sufficient evidence independent of David's statements to support Joseph's conviction for assault with a weapon.

7

¶23    First, the State presented the redacted 911 tape without objection from Joseph. Tiffany did not testify at trial, but the 911 tape included her statements. Tiffany was present at the scene of the incident and observed first hand her father's injury. She told the 911 operator that Joseph struck her father in the eye with a rifle, causing it to turn purple.

¶24    Officer Rhodes's independent observations support Tiffany's statements. Officer Rhodes testified without objection that he observed a "clear, reddening cut with exposed blood on the upper left portion of [David's] eyebrow area." The State also presented without objection from Joseph a photograph of David on the night of the incident depicting his injured eye.

¶25    Joseph's motion to dismiss did not preserve for appeal the admissibility of Tiffany's statements, Officer Rhodes's observations, and the photograph of David's injury. Joseph argued in his pretrial motion with respect to the assault with a weapon charge that if David failed to testify at trial, Joseph would "not have the ability to cross-examine him, examine his motives, examine his testimony whatsoever." The motion to dismiss did not discuss any potential evidence supporting the assault with a weapon charge other than David's hearsay statements. And the motion to dismiss was not sufficiently specific to alert the trial court that Joseph would be objecting to Tiffany's statements to the 911 dispatcher, Officer Rhodes's observations of David's injury, and the photograph of David's injury. Thus, under *Vukasin*, ¶ 29, Joseph's motion to dismiss did not preserve an objection to this evidence on appeal.

¶26    The State presented the jury with other evidence that proved the same fact as David's hearsay statements--that Joseph struck David in the face with a rifle. In *Van Kirk* we adopted

8

the "cumulative evidence" test for harmless error analysis. *State v. Van Kirk*, 2001 MT 184, ¶ 43, 306 Mont. 215, ¶ 43, 32 P.3d 735, ¶ 43. We held that in order for a trial error to be harmless under this test, "the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence, and qualitatively, by comparison, the tainted evidence would not have contributed to the conviction." *Van Kirk*, ¶ 47. We conclude that the admission of David's hearsay statements through the testimony of Officer Rhodes was harmless in light of the other evidence that the State presented on the assault with a weapon charge through the 911 tape, Officer Rhodes's observations, and the photograph of David's injury. *Van Kirk*, ¶ 47.

¶27    The admission of the redacted 911 tape without objection from Joseph also renders much of Officer Rhodes's testimony cumulative and, thus, harmless error. We faced a similar situation concerning a defendant's failure to object to the admission of a 911 tape in our recent decision in *State v. Mizenko,* 2006 MT 11, 330 Mont. 299, ___ P.3d ___. The State presented three witnesses who testified regarding hearsay statements of the victim, Debra Mizenko (Debra), who did not testify at trial. *Mizenko*, ¶ 25. Debra's neighbor, Dawn Grove (Grove), testified that an out of breath Debra appeared at Dawn's house and asked her to call 911. *Mizenko*, ¶ 3. Grove further testified that Debra told her that Mizenko had been drinking and was trying to hurt her. *Mizenko*, ¶ 4. The 911 operator, Tami King (King), testified that Debra told her that Mizenko hit her, pushed her down, and pulled her hair out. *Mizenko*, ¶ 5. Finally, Officer Scott Buennemeyer (Buennemeyer) testified that when he arrived at the scene he saw a lock of hair on the kitchen floor and another one on the living room floor. *Mizenko*, ¶ 6. He further testified that Debra told him that the hair

9

was hers, and that Mizenko had pulled it from her head during the altercation. *Mizenko*, ¶ 6.

¶28 Mizenko objected to the hearsay statements from Grove, King, and Buennemeyer, arguing that the court's decision to admit them denied him his Sixth Amendment right to confrontation. *Mizenko*, ¶ 7. He failed to object, however, to the admission of the 911 tape. *Mizenko*, ¶¶ 5, 26. The State played the tape for the jury, wherein Debra told King that Mizenko hit her, pushed her down, and pulled out her hair. *Mizenko*, ¶ 26. We determined that, in light of Mizenko's failure to object to the admission of the 911 tape, "King's and Buennemeyer's testimony concerning the hair pulling, even if objectionable, was cumulative and, thus, harmless error." *Mizenko*, ¶ 26, citing *Van Kirk*, ¶ 43. We likewise concluded that King's statements that Mizenko had pushed Debra down and hit her constituted harmless error, at most. *Mizenko*, ¶ 26.

¶29 Here the 911 tape revealed damaging statements from both David and Tiffany regarding the assault with a weapon charge. Both stated on the tape that Joseph struck David with a gun. Joseph failed to object to the admission of the tape on hearsay grounds. Joseph initially objected to the tape on *Just* notice grounds and requested that the court redact the tape to cure any *Just* notice violations. Judge Haynes alerted Joseph that the tape was "riddled with hearsay," yet Joseph made no objection on those grounds, thereby allowing damaging statements into evidence regarding the assault with a weapon charge. We repeatedly have held that a party's assertion of error "must stand or fall on the ground" raised in the trial court. *State v. Davis*, 2000 MT 199, ¶ 39, 300 Mont. 458, ¶ 39, 5 P.3d 547, ¶ 39. Thus, as in *Mizenko*, the testimony of Deputy Rhodes regarding statements made by David,

10

even if objectionable, was cumulative and, thus, harmless error.  *Mizenko*, ¶ 26.

**¶30    2. Whether the District Court abused its discretion by denying Joseph's motion for a mistrial.**

¶31    Joseph argues that the District Court abused its discretion by denying his motion for a mistrial based on impermissible remarks made by the State in its opening statement. He argues that the statement, attributed to Joseph, "I want the baby dead. I hope the baby dies," repeated during the State's opening statement prejudiced his right to a fair trial because no foundation had been laid for the statement. The State counters that Joseph waived his right to appeal because of his failure to make a contemporaneous objection to the State's opening comment. Alternatively, the State asserts that the District Court did not abuse its discretion in denying Joseph's motion for a mistrial.

¶32    Joseph filed a motion in limine to exclude any reference to Joseph's statement to Tracyn that he wanted the baby dead. The court responded that if the State could demonstrate that the statement was made in the immediate course of the charged struggle it would allow the statement. If the statement was made on a previous evening or pertained to an unrelated desire to terminate the pregnancy, however, the court agreed with Joseph that the statement should be excluded.

¶33    The State began its opening statement with "I want the baby dead. I hope the baby dies. These statements are going to be part of the State's case . . . ." Joseph did not object and did not move for a mistrial until a conference in chambers the following morning. Joseph argued that the statement's admissibility was pending and the State effectively took the power away from the court to rule on the issue. The court denied Joseph's motion for mistrial. The court determined that the State had not violated a court ruling by using "I want

12

the baby dead. I hope they baby dies," in its opening statement. The court reasoned that if the State failed to show that Joseph made these comments, Joseph could point out the State's failure to present promised evidence during his closing statement. The court also admonished Joseph for failing to make a contemporaneous objection.

¶34 Joseph argues on appeal that his failure to timely object to the State's remarks is "well explained." He asserts that he had no time to object, given how quickly the State made the comment. He further asserts that his belief that the motion to exclude the statement was pending justifies his failure to contemporaneously object.

¶35 A defendant must make a timely objection to properly preserve an issue for appeal. *State v. Gardner*, 2003 MT 338, ¶ 49, 318 Mont. 436, ¶ 49, 80 P.3d 1262, ¶ 49. The defendant in *Gardner* failed to object to allegedly impermissible evidence until two days after the State presented the evidence to the jury. *Gardner*, ¶¶ 52, 53. We held that the defendant did not make a timely objection and therefore declined to consider his issue on appeal. *Gardner*, ¶ 59. In so holding, we distinguished *State v. Whitlow* (1997), 285 Mont. 430, 949 P.2d 239, wherein we chose to consider the merits of the defendant's claimed error even though he waited until his cross-examination to object to alleged impermissible testimony admitted during the State's case-in-chief. *Whitlow*, 285 Mont. at 442, 949 P.2d at 247. We noted in *Gardner* that "whatever flexibility in the timing of an evidentiary objection may have been bestowed by Whitlow cannot be stretched into a delay of two days after the evidence has been presented to the jury." *Gardner*, ¶ 58.

¶36 *Gardner* applies to Joseph's case. The flexibility in the timing of an objection conferred in *Whitlow* does not extend to the following day. We agree with the District Court

13

that Joseph should have made a timely objection to the State's comment. Moreover, we find unpersuasive Joseph's assertion that the State's comment was made too quickly for him to object. Joseph's failure to make a timely objection to the State's alleged impermissible comment waives the objection and precludes appellate review. *Gardner*, ¶ 59.

¶37 Moreover, even if Joseph had made a timely objection to the State's comment, the State later established the proper foundation for the statement. Deputy Cashell testified that Tracyn told him immediately after the incident that Joseph said he "wanted the baby to die" just before punching Tracyn in the stomach. Tracyn admitted that she told officers on the night of the incident that Joseph said he wanted the baby dead several times that day. Tracyn recanted her story at trial and, though she admitted to having told officers that Joseph said he wanted the baby dead, she denied that Joseph actually had made those remarks. The State used Tracyn's admission to introduce her statement to officers on the night of the incident. The District Court admitted the statement without objection. The court previously had redacted portions of Tracyn's statement to cure a potential *Just* notice violation. Tracyn repeatedly told officers that Joseph said he wanted the baby dead and hoped the baby died several times on the day of the incident in the redacted version of her statement.

¶38 We previously have held that facts asserted by a party in an opening statement that they do not prove during trial may constitute grounds for a mistrial if there is a reasonable possibility that the unproved facts--on which evidence was either not offered or not admitted--contributed to the conviction. *See State v. Scheffelman* (1991), 250 Mont. 334, 339, 820 P.2d 1293, 1296. Joseph's statements, as recounted by the State in its opening statement, do not fall, however, within the ambit of *Scheffelman*. Here, the District Court

14

admitted without objection evidence establishing those statements through Deputy Cashell's testimony and Tracyn's statement to police, with the proper *Just* notice redactions. Joseph conceded during a pretrial conference that Tracyn's redacted statement constituted "substantive evidence," and, more importantly, the State established through the testimony of Tracyn and Deputy Cashell that Joseph had uttered "I want the baby dead. I hope the baby dies," during the immediate course of the charged struggle. Thus, since the State later proved the statements on which Joseph based his motion for mistrial, *Scheffelman* has no application here. The District Court therefore did not abuse its discretion in denying Joseph's motion for a mistrial.

¶39 Affirmed.

_____
/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson concurs.

¶40     I concur in the result of this case only because Joseph did not object to the admission of Tiffany's statements on the redacted 911 tape and because of the corroboration of David's injuries through Deputy Rhodes' testimony.  That evidence, standing alone, was sufficient to sustain the jury's conviction.

¶41     I do not agree with the superfluous discussion in the rest of the Court's opinion as to Issue 1.  In my view, Joseph more than adequately preserved his Sixth Amendment *Crawford* claim by virtue of his pre-trial Motion to Dismiss Count I and, having done so, had no obligation to make contemporaneous objections throughout the trial to the admission of David's hearsay statements.

¶42     Finally, and for the same reasons that I dissented in *State v. Mizenko,* 2006 MT 11, ___ Mont. ___, ___ P.3d___, I do not agree and will continue to disagree with the whole concept of "victimless" prosecutions.[1]  *See Mizenko*, ¶¶ 44-192 (Nelson, J., dissenting).  Most of the problems that plagued *Mizenko* plague this case as well, including the State's failure to secure the attendance of the victim for trial, the denial of the defendant's right of confrontation through the use of hearsay, and the District Court's questionable rationale for admitting the victim's out-of-court statements:  "[O]n a homicide case, the victim is dead and the defendant doesn't get to confront the dead person. . . .  So I don't view the confrontation right as running directly to having the right to have a victim present in court.  It's just if they are present then the defendant has a right to see them face to face and ask them questions."

---

[1] The prosecution was "victimless" with respect to Count I, in which Joseph was charged with assaulting David with a weapon.  Because Tracyn appeared and testified at trial, prosecution of the charges related to her injuries was not "victimless."

16

/S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the concurrence of Justice James C. Nelson.


/S/ PATRICIA COTTER