No. 05-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 187

IN THE MATTER OF K.D.K.,

A Youth Under the Age of Eighteen.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
               In and For the County of Ravalli, Cause No. DJ 00-09
               Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant Youth:

        David E. Stenerson; Stenerson Law Office, Hamilton, Montana

        For Respondent State:

        Hon. Mike McGrath, Attorney General; Joslyn M. Hunt,
        Assistant Attorney General, Helena, Montana

        George H. Corn, Ravalli County Attorney; Karen S. Mahar, Deputy
        County Attorney, Hamilton, Montana

                              Submitted on Briefs:  March 29, 2006

                                      Decided:  August 15, 2006

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      K.D.K. appeals from the order entered by the Youth Court of the Twenty-First Judicial District, Ravalli County, requiring him to pay $12,662.18 in restitution. We reverse and remand.

¶2      We restate the dispositive issue on appeal as whether the Youth Court had authority to order restitution on June 9, 2005.

## BACKGROUND

¶3      On October 26, 1999, twelve-year-old K.D.K.'s parents reported to the Ravalli County Sheriff's Office that K.D.K. may have sexually assaulted an eight-year-old girl. Subsequently, the State of Montana filed a petition alleging K.D.K. was a delinquent youth because he had committed an act that, if committed by an adult, would constitute the felony offense of sexual assault as defined in § 45-5-502, MCA. K.D.K. admitted the allegation in the petition and the Youth Court adjudicated him a delinquent youth.

¶4      After a dispositional hearing in September of 2000, the Youth Court committed K.D.K. to the Department of Corrections, suspended the commitment and placed him on formal probation until he reached the age of 18 on February 27, 2005. The court imposed numerous conditions on K.D.K.'s probation, including a condition that

> [t]he youth is liable for payment of restitution in an amount to be determined at a later date plus a 10% Youth Court administrative fee. The youth will be responsible for any/all therapy costs incurred by the victim as a result of the crime committed against the victim, including mileage to and from the therapist.

The disposition order also delineated six potential consequences if K.D.K. violated any of the

2

probation conditions and stated that the Youth Court "shall retain jurisdiction over the youth until the age of twenty-one for financial purposes such as payment of fees/fines, attorney fees and/or restitution." The court later amended the order in a manner unrelated to the issue on appeal.

¶5     In the years following the disposition, various people corresponded regarding the restitution. In April of 2003, a restitution officer sent a memorandum to the deputy county attorney, stating a therapist had advised she was "completely finished with counseling for the victim and victim's mother," setting the restitution amount owed--including the administrative fee--at $4,507.53 and recommending a restitution hearing. No restitution hearing was requested or held.

¶6     In June of 2003, the State, K.D.K. and K.D.K.'s parents executed a restitution agreement which specified that K.D.K. was liable for payment of restitution in the amount of $4,507.53, payable in 48 monthly installments of $95.00, with full payment due no later than May 15, 2007. The agreement also identifies the $4,507.53 as the "TOTAL RESTITUTION DUE"--a phrase that appears in bold and capital letters. In July of 2003, the Youth Court judge signed the agreement and it was filed. The $4,507.53 was paid in full prior to the events at issue here.

¶7     On February 11, 2005, the State moved to modify the Youth Court's prior order regarding a matter unrelated to this appeal and also requested a restitution hearing. The State acknowledged K.D.K. had satisfied the restitution requirements contained in the 2003 agreement. It noted, however, that the victim's mother had submitted claims for additional restitution for a "therapeutic sports activity for the victim and schooling costs for herself."

3

The State requested consideration of the motion prior to termination of K.D.K.'s probation on February 27, 2005.

¶8 The court scheduled a hearing for February 23, 2005. After some discussion at that hearing, the Youth Court appointed counsel for K.D.K. and scheduled another hearing for two days later.

¶9 At the hearing on February 25, 2005, the victim's mother testified regarding her university-related expenses and the State offered two documents, which the Youth Court admitted into evidence. The first document is the mother's letter to the probation officer-- which is dated October 18, 2002 and stamped by an unidentified person as received on August 4, 2004. Attached to the letter is a list--apparently prepared by the mother--of claims including a single claim of $6,000 for her university-related expenses and several claims for various BMX bicycling expenses of the victim, such as bikes, equipment, clothing and race fees. The second exhibit is an unofficial university transcript reflecting the mother's grades, but containing no financial information. The deputy county attorney stated the State did not submit detailed documentation of the $6,000 claim for university-related expenses at the hearing because "[w]e did not want to take up the Court's time with the details." Both counsel indicated they believed they could reach an agreement about the victim's BMX bicycling expenses, although they did not state an amount at the hearing. Among other things, the court stated its belief that the mother was entitled to restitution for university-related expenses, but did not "feel it would be right to make an award without a detailed analysis of what goes into this figure[.]" The Youth Court directed the parties to file post-hearing briefs and stated "[t]hen I'll consider whether or not that $6,000 would be awarded."

¶10     In its brief, the State asserted the parties had stipulated at the February 25 hearing that K.D.K. would pay the BMX expenses and the parties had agreed to the amount of $4,352.93, but pointed to nothing of record supporting an agreement to that amount. With respect to the university-related expenses, the State argued that, although the mother had initially requested $6,000.00, her actual expenses totaled $8,309.25. Along with its brief, the State submitted documents associated with the claimed university-related expenses.

¶11     Shortly thereafter, K.D.K.'s parents sent a letter to the Youth Court stating they wished to retain private counsel because of various concerns with the representation being provided, and appointed counsel moved to withdraw. The court granted that motion, and private counsel filed a notice of appearance. Then, in his response brief, K.D.K. advised that he and his parents did not agree to any of the requested additional restitution. He also contended that the Youth Court no longer had authority to add restitution amounts because his probation--of which the earlier, paid restitution was a condition--had terminated on February 27, 2005. The State filed a reply brief.

¶12     On June 9, 2005, the Youth Court ordered K.D.K. to pay restitution totaling $12,662.18, apparently reflecting the sum of the State's requests for $4,352.93 in BMX bicycling expenses for the victim and $8,309.25 in university-related expenses for the victim's mother. In the order, the court's only reference to K.D.K.'s contentions about its authority to impose additional restitution was an observation that "[a]s originally ordered in this matter, this Court retains financial jurisdiction over the Youth and his parents for financial purposes until the Youth turns twenty-one (21) years of age." K.D.K. appeals. We set forth additional facts below.

**STANDARD OF REVIEW**

¶13 Relying on *Matter of T.A.S.* (1990), 244 Mont. 259, 263, 797 P.2d 217, 220, the State contends that this Court reviews a youth court's order for abuse of discretion. In addressing a challenge to a youth's commitment in *T.A.S.*, we stated "[i]t is well settled in Montana that absent a clear showing of abuse of discretion, the District Court judgment will not be overruled," and relied on a marital dissolution case. Our basis for citing to a marriage dissolution case for a standard of review in *T.A.S.* is not clear.

¶14 In any event, our cases since *T.A.S.* establish that the standard of review in a youth court case depends on the issue presented. For example, in *In re R.L.H.*, 2005 MT 177, ¶¶ 15-16, 327 Mont. 520, ¶¶ 15-16, 116 P.3d 791, ¶¶ 15-16 (citations omitted), we reviewed the denial of a motion to dismiss a revocation petition to determine whether the youth court correctly interpreted the law, and we reviewed the denial of a motion to exclude testimony--which we treated as a suppression motion--to determine whether the findings of fact were clearly erroneous and whether the findings were correctly applied as a matter of law.

¶15 Here, the dispositive issue is whether the Youth Court had authority to impose additional restitution on June 9, 2005. As discussed below, our analysis in this regard is based primarily on youth court statutes. We review a court's interpretation and application of statutes for correctness. *See In re T.H.*, 2005 MT 237, ¶ 35, 328 Mont. 428, ¶ 35, 121 P.3d 541, ¶ 35 (citation omitted).

**DISCUSSION**

¶16 *Did the Youth Court have authority to order restitution on June 9, 2005?*

¶17 K.D.K. generally asserts that since his probation ended on February 27, 2005, his

6

eighteenth birthday, the Youth Court did not have authority to order additional restitution after that date. We agree.

¶18 As stated above, the Youth Court's disposition order in K.D.K.'s case contained a condition of probation that K.D.K. was "liable for payment of restitution in an amount to be determined at a later date[.]" It is undisputed that the parties executed and filed, in 2003, a restitution agreement--which the Youth Court apparently approved by its signature--establishing $4,507.53 as the total amount owed, and that amount was paid. The State did not petition to revoke K.D.K.'s suspended commitment--or take any other action with respect to any of the disposition order's delineated possible consequences--for violation of the restitution condition or any other condition of probation. Thus, K.D.K. reached his eighteenth birthday having satisfied the conditions of his probation and, pursuant to the original disposition order, his probation terminated on February 27, 2005.

¶19 The State asserts, however, that the court had jurisdiction pursuant to § 41-5-205(1), MCA, which states, in pertinent part, that "[u]nless terminated by the court and except as provided in subsections (2) and (3), the jurisdiction of the court continues until the individual becomes 21 years of age." The parties take differing views of whether any part of subsection (2) applies; we decline to address those arguments. With respect to the "unless terminated" language, the State contends the Youth Court retained jurisdiction over K.D.K. until the age of 21 for purposes of financial obligations. We construe this argument to mean that the Youth Court has retained authority to impose additional restitution until K.D.K.'s twenty-first birthday on February 27, 2008. Based on the record in this case, we disagree.

¶20 The disposition order states that the court retained jurisdiction until K.D.K. reaches

7

the age of 21 "for financial purposes such as payment of fees/fines, attorney fees and/or restitution." By its terms, the language in the disposition order establishes the Youth Court retained jurisdiction after K.D.K. completed his probation only to ensure payment of determined--but not completely paid--financial obligations, not to impose additional obligations. Therefore, the Youth Court's statement in the later restitution order that it had "originally" retained jurisdiction "for financial purposes"--without including the "such as payment" language--is incomplete and somewhat misleading. If the exceptions set forth in § 41-5-205, MCA, do not apply, a youth court may--in another case--retain jurisdiction over a youth until he or she reaches 21 years of age. On this record, however, we conclude the Youth Court limited its retention of jurisdiction beyond K.D.K.'s eighteenth birthday to enforcement of the financial obligations set forth in the original disposition order and the 2003 agreement--signed by the parties and the Youth Court--establishing the total restitution to be paid by K.D.K. Under these circumstances, the court did not retain jurisdiction to impose additional restitution.

¶21    The State also advances § 41-5-1422(1), MCA, which provides that "[a]n order of the court may be modified at any time." The State's reliance on this statute is premised on its argument that the Youth Court retained jurisdiction to impose additional restitution after K.D.K.'s probation had terminated--an argument we have already rejected. In addition, although the order for additional restitution directs the probation office to prepare a payment schedule, the order is not framed as a "modification" of the disposition order or the restitution condition of probation set forth therein. Thus, since the order for additional restitution does not purport to be a modification of the original disposition order, § 41-5-

8

1422(1), MCA, does not apply. We conclude § 41-5-1422(1), MCA, which pertains only to modifications made while a youth court has jurisdiction, did not authorize the Youth Court to impose additional restitution in a stand-alone order after K.D.K.'s probation--of which the payment of restitution was a condition--expired.

¶22    We hold the Youth Court did not have authority to order K.D.K. to pay restitution on June 9, 2005.

¶23    Reversed and remanded with instructions to vacate the order for additional restitution.


                                          /S/ KARLA M. GRAY


We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

9

Justice Jim Rice specially concurring.

¶24 Section 41-5-205, MCA (1999), provides that the youth court retains jurisdiction until the youth reaches age twenty-one, unless jurisdiction is "terminated by the court." Here, the youth court did not expressly terminate its jurisdiction, but, rather, stated it was retaining jurisdiction until K.D.K. reached age twenty-one "for financial purposes, such as payment of fees/fines, attorney fees and/or restitution." Thus, and without a clear statement of termination of its jurisdiction, I would not interpret the youth court's order as terminating jurisdiction to address restitution, because restitution falls within the term "financial purposes."

¶25 The Court draws upon the apparent finality of the initial restitution order to conclude that the District Court terminated its jurisdiction. However, I believe this conclusion confuses finality of an issue with the court's jurisdiction over the issue.

¶26 Nonetheless, I concur in the Court's holding for the reason that the second restitution order provided for compensation for the victim that exceeds that which is authorized by statute. *See* § 41-5-1512(14), MCA (1999).

/S/ JIM RICE

10