FILED

12/27/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0791

DA 15-0791

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 340

IN THE MATTER OF:

B.W.S.,

    Youth in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Ninth Judicial District, In and For the County of Glacier, Cause No. DN-12-01 Honorable Daniel A. Boucher, Presiding Judge |

COUNSEL OF RECORD:

    For Appellant:

    Patrick Gilbert, Corinne Gilbert, Self-Represented, Springfield, Oregon

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

    Bradley Custer, Assistant Attorney General, Kalispell, Montana

    Carolyn Berkram, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs: November 16, 2016

Decided: December 27, 2016

Filed:

_____

Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Intervenors Patrick and Corinne Gilbert appeal from a placement hearing held in the Ninth Judicial District Court, Glacier County, determining that the Department of Health and Human Services's (Department) placement of B.W.S. with the Watson family was in B.W.S.'s best interests. We affirm.

## ISSUE

¶2 On appeal, the Gilberts raise nine issues. We restate the dispositive issue as follows:

*Whether the District Court erred in determining that it was in B.W.S.'s best interest to remain in her placement with her current foster family?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Born in January 2012, B.W.S. was removed from the care of her birth mother (Mother) on January 27, 2012, and placed in protective custody by the Department of Public Health and Human Services, Child and Family Services Division. Subsequently, B.W.S. was adjudicated a youth in need of care and temporary legal custody was granted to the Department. B.W.S. was placed with Jared and Cindy Watson on February 13, 2012, and has remained in that placement since that time. In June of 2013, the Department determined B.W.S. should remain in the care of the Watsons instead of being moved to reside with the Gilberts in Oregon. The Gilberts currently have custody of two of B.W.S.'s biological half-siblings. Citing their belief that B.W.S. should be with her half-siblings, the Gilberts intervened in the case in August 2013, contesting B.W.S.'s placement with the Watsons.

2

¶4 In November 2013, in a separate action, Mother appealed the District Court's termination of her parental rights and this Court reversed, *see In re B.W.S.*, 2014 MT 198, 376 Mont. 43, 330 P.3d 467, determining that the district court judge should have recused himself. *In re B.W.S.*, ¶ 19. On remand, the District Court set a hearing for January 2015 to determine whether to terminate Mother's parental rights. Following a hearing, the District Court terminated Mother's and any and all putative fathers' parental rights on February 12, 2015, and granted permanent legal custody to the Department.[1] Neither parent appealed.

¶5 On April 17, 2015, the District Court held a hearing to determine placement for B.W.S., with notice to the Gilberts as intervenors. Counsel for the Gilberts was forty-five minutes late for the hearing. The hearing commenced at approximately 10:45 a.m. and continued throughout the day with a few interruptions for recesses. When the court concluded the hearing at 6:05 p.m., counsel for the Gilberts complained that she had had insufficient time to introduce all of the evidence she wanted to present. The District Court disagreed and declined to extend the hearing. The transcript of the hearing is 301 pages in length.

¶6 On June 4, 2015, the District Court issued an Order on Placement concluding that it was in the best interests of B.W.S. to remain "in her current placement with the Watson family for adoption." In its Order on Placement, the District Court repeatedly emphasized that, regardless of any errors that the Department may have committed

---

[1] The biological father's identity is unknown at this time.

during its earlier handling of the case, the determinative factor in the District Court's decision was the best interests of the child at the current time.

¶7 On appeal, the Gilberts allege that their due process rights were violated during the placement hearing in numerous ways, including: the allocation of insufficient time to present their evidence, including witness testimony, at the hearing; the preclusion of certain evidence at the hearing; the allocation of insufficient time to cross-examine witnesses; and the District Court's intentional mismanagement and insufficient knowledge of the case. Additionally, the Gilberts argue that, under the cumulative error doctrine, the errors in this case cumulatively require reversal of the District Court's decision.

## STANDARDS OF REVIEW

¶8 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re J.A.B.*, 2015 MT 28, ¶ 25, 378 Mont. 119, 342 P.3d 35. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if review of the record convinces the court that a mistake was made. *In re J.A.B.*, ¶ 25. We review a district court's conclusions of law to determine whether they are correct. *In re J.A.B.*, ¶ 25.

¶9 We review discretionary trial court rulings for an abuse of discretion. *In re Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105. Such a determination by a trial court is afforded "all reasonable presumptions as to the correctness of the determination" and will not be disturbed on appeal "unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a

4

clear abuse of discretion." *In re M.B.*, 2009 MT 97, ¶ 11, 350 Mont. 76, 204 P.3d 1242 (citation omitted). A district court abuses its discretion if it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *In re J.A.B.*, ¶ 25.

## DISCUSSION

¶10 The Gilberts raise numerous issues alleging various theories under which their due process rights were violated during the course of the underlying proceeding. One of their primary due process allegations is that they were deprived of sufficient time within which to present their case at the placement hearing, which had been scheduled by the court to take three hours. While their attorney arrived 45 minutes late to the placement hearing, the court still afforded the parties sufficient time within which to present their arguments and evidence. Moreover, counsel for the Gilberts did not raise due process concerns in the District Court at the time counsel moved for continuation of the hearing.

¶11 This Court will not address issues raised for the first time on appeal. *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 53 P.3d 38. "In order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the district court." *In re T.E.*, ¶ 20 (citation omitted). We have previously held that "when an appellant argues he was deprived of a fundamentally fair procedure, 'it [is] necessary that he make the same argument to the District Court.'" *In re T.E.*, ¶ 20 (quoting *In re M.W.*, 2002 MT 126, ¶ 22, 310 Mont. 103, 49 P.3d 31).

¶12 Because the Gilberts did not raise any due process arguments in the District Court, we will not address the issue in depth on appeal. It bears noting, however, that the

District Court did allow the Gilberts to intervene in the case and contest the placement of B.W.S. and also allowed them the opportunity to be heard at a placement hearing. We have said that the hallmarks of due process are notice and opportunity to be heard. *Kulstad v. Maniaci*, 2010 MT 248, ¶ 41, 358 Mont. 230, 244 P.3d 722. The Gilberts had both. We therefore disagree with their contention that they did not receive due process.

¶13    *Whether the District Court erred in determining that it was in B.W.S.'s best interest to remain in her placement with her current foster family?*

¶14    As noted by the District Court, this Court has not yet addressed a placement dispute concerning a non-native child. Under the governing statutory law, a district court has the authority to "settle any dispute between the parties to an action regarding the appropriate placement" of a child alleged or adjudicated as a youth in need of care. Section 41-3-440, MCA.

¶15    The procedural posture of the instant case warrants a brief explanation. During the placement hearing, the District Court noted that the Department had already been granted full legal custody of B.W.S. and the right to consent to adoption following the termination hearing. Under such circumstances, the District Court would not normally be called upon to determine whether the Department's subsequent placement was appropriate, as absent any dispute regarding an appropriate placement, such a determination is up to the Department. Section 41-3-440, MCA. However, because the Gilberts had challenged the placement and the Department conceded that permanent legal custody should be conditioned upon a placement hearing, it was appropriate for the court to "settle any dispute between the parties to an action regarding the appropriate

6

placement." Section 41-3-440, MCA. The court explicitly concluded that the burden of proof would not be on either party and that both parties would have "equal footing" during the placement hearing.

¶16 The question before this Court is whether the District Court erred in finding that placement with the Watsons was in the best interest of B.W.S. and determining that the Department could consent to adoption of B.W.S. by the Watsons. Because this determination is squarely within the province of the District Court, we review it for an abuse of discretion.

¶17 The Gilberts argued strenuously that because they had custody of B.W.S.'s biological half-siblings, placement of the child with them was appropriate. In addition, they challenged the propriety of the placement with the Watson family, arguing among other things that the Watson's adult son Dalton Becker presented a danger to the child. They also raised multiple questions about the manner in which the Department had handled earlier proceedings with respect to B.W.S.

¶18 When delivering its decision orally at the placement hearing, the District Court engaged in a detailed review of the evidence presented, continually noting that the primary consideration before the district court was the best interests of B.W.S. at the present time. In determining that the current placement was in the best interests of B.W.S., the District Court found that B.W.S. had been with the Watsons for three years and three months, that B.W.S. had bonded with the Watsons and with B.W.S.'s foster siblings, that there was no evidence B.W.S. had been harmed by placement with the Watsons, that evidence established B.W.S. was healthy, and that there were no signs of

abuse or neglect in B.W.S.'s current placement. Further, in response to claims made by the Gilberts, the District Court concluded that there was no evidence that B.W.S. was at risk of harm from the Watsons' adult son Dalton Becker, and that B.W.S. had been protected from Becker since placement with the Watsons. Finally, the District Court found that removal from the current placement would cause harm to B.W.S.

¶19 A district court "is bound to give primary consideration to the physical, mental[,] and emotional conditions and needs of [the child]." *In re A.H.D.*, 2008 MT 57, ¶ 13, 341 Mont. 494, 178 P.3d 131. The subject statute, § 41-3-440, MCA, squarely places the resolution of any placement dispute within the discretion of the District Court. We determine that the District Court's findings of fact were supported by substantial evidence, and that the District Court did not misapprehend the effect of that evidence. A review of the record convinces this Court that, even without the guidance of previous case law on this subject, the District Court did not act arbitrarily or exceed the bounds of reason in reaching its final determination that placement with the Watsons was in the present best interests of B.W.S.

## CONCLUSION

¶20 We conclude that the District Court did not err in approving the Department's placement of B.W.S. with the Watsons. We decline to reach the constitutional issues raised by the Gilberts as they are not properly before this Court. We reiterate that the Gilberts received notice and an opportunity to be heard in this case. Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE