Chief Justice Mike McGrath delivered the Opinion of the Court.
***192 ¶ 1 This appeal stems from a district court's denial of a motion to be transported from the courtroom to the Montana State *701 Hospital without ***193 handcuffs by an individual, who immediately prior to the motion, was involuntarily committed to the Montana State Hospital.
¶ 2 We restate the issue on appeal as follows:
Does Montana law preclude physical restraint of a seriously mentally ill individual during transportation from a courtroom to a hospital or mental health facility?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 J.J. is a thirty-year-old-man with diabetes. As a child, J.J. was diagnosed with Bipolar Disorder -I. Both conditions require J.J. to take daily medication. In May 2016, J.J. was seen by the Gallatin County crisis response team eight times in six days, admitted to the Bozeman Deaconess Hospital emergency room four times in seven days, and had discharged himself from Hope House, a local support program. During his repeated appearances at the hospital J.J. became agitated by other patients and made numerous non-specific threats, one specific threat to kill the guy in the next room, and told nearby officers to just shoot him. In the emergency room J.J. was seen by David Powell, LCSW/MHP, a member of the crisis response team. Powell performed mental health evaluations on J.J. on May 14 and 17, 2016. Powell determined that, based upon his symptoms, J.J. was suffering from "Bipolar I disorder, severe with psychosis," noting that he was "obviously very manic," had "pressured speech," had "very erratic changes in topic" when speaking, and was delusional. Upon discharge from the hospital and Hope House, J.J. was provided a multi-day supply of his medication for both of his conditions. He either lost them or did not take them.
¶ 4 At Powell's request, on May 17, 2017, the Gallatin County Attorney's Office filed a petition for involuntary commitment. In an affidavit attached to the petition, Powell asserted that J.J. was a danger to himself and others, and that J.J. was unable to provide for his own basic needs or comprehend the very serious consequences of his failure to take his diabetes medication. The District Court scheduled an evidentiary hearing on the commitment and assigned Adrian Utsch, LCPC/MHP, to conduct an independent examination of J.J. prior to the hearing. After the petition was filed, J.J. fell into a diabetic coma and was again taken to the emergency room. The District Court ordered that J.J. be held at the Montana State Hospital (MSH) until the hearing.
¶ 5 On May 23, 2016, immediately prior to the hearing, J.J. received the court ordered mental health evaluation. Utsch concluded J.J. was suffering from severe and chronic mental illness, that he was a danger ***194 to himself or others, and in danger of further decompensation unless he continued to receive treatment. Utsch testified that during the evaluation J.J. was manic and told Utsch that he had heard his father's voice telling him to kill himself but that J.J. had never taken steps to do so. At the hearing, Powell testified that J.J. posed an imminent danger to himself because of his mental disorder. When responding to a question concerning any statements J.J. made concerning self-harm or harm to others, Powell relayed J.J.'s actions in the emergency room where J.J. asked a police officer to shoot him, and threatened another patient.
¶ 6 J.J. and counsel were present at the hearing and objected to any involuntary commitment. The District Court found J.J. to be suffering from Bipolar I Disorder and that he was substantially unable to provide for his own basic health and safety needs. The District Court ordered J.J. involuntarily committed to MSH for a period of no more than three months. After the District Court pronounced its decision, counsel requested J.J. not be handcuffed in the sheriff's vehicle on the way to MSH. The District Court stated, "that goes above and beyond what I can order and I assume, Deputy Murphy, that probably for transport he does have to be restrained, doesn't he, in the vehicle?" Deputy Murphy replied in the affirmative. J.J. protested. The District Court ruled "I can't change the fact you have to be restrained with handcuffs in the car."
¶ 7 J.J. appeals the denial of his request to not be handcuffed.
*702 STANDARD OF REVIEW
¶ 8 This Court reviews a district court's commitment order to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. In re C.K. , 2017 MT 69, ¶ 10, 387 Mont. 127, 391 P.3d 735. A determination by a trial court is afforded reasonable presumption as to its correctness and will not be disturbed on appeal unless there is a mistake of law or a finding of fact which is not supported by substantial credible evidence that would amount to a clear abuse of discretion. In re B.W.S., 2016 MT 340, ¶ 9, 386 Mont. 33, 386 P.3d 595 (citing In re M.B. , 2009 MT 97, ¶ 11, 350 Mont. 76, 204 P.3d 1242 ).
DISCUSSION
¶ 9 Does Montana law preclude physical restraint of a seriously mentally ill individual during transportation from a courtroom to a hospital or mental health facility?
¶ 10 The State asserts J.J.'s argument is not reviewable, as it is being ***195 made for the first time on appeal, because his in-court motion failed to specify his right to be free from restraint or mention the statute governing that right. We disagree. J.J. raised an issue before the District Court, the District Court then had the opportunity to rule, and made a ruling. J.J. is not raising the issue of being handcuffed in the sheriff's vehicle on the way to MSH for the first time on appeal. The State's assertion regarding whether J.J. argued that a specific statute applies is unpersuasive.
¶ 11 The State frivolously argues J.J.'s notice of appeal is defective because J.J. stated he was appealing "from the final judgment or order entered in such action on 23rd day of May 2016"; yet, his request regarding the handcuffs came after the District Court order pronouncing his involuntary commitment. The State cites to State v. Spotted Blanket for the proposition that we will not consider an appeal from an order not designated in the notice of appeal. 1998 MT 59, ¶ 12, 288 Mont. 126, 955 P.2d 1347. In 2003, this Court determined that a notice of appeal that uses the language from the final judgment is not a deficient notice of appeal. State v. Gardner , 2003 MT 338, ¶ 19, 318 Mont. 436, 80 P.3d 1262. We noted Spotted Blanket , but held that a notice of appeal from the final judgment is sufficient under § 46-20-104, MCA. Gardner , ¶ 19.
¶ 12 As to the merits, J.J. argues Montana law provides a specific statutory right to be free from physical restraint and isolation while involuntarily committed, which applies to the transportation of patients who have been involuntarily committed to MSH. The State argues the right to be free from physical restraint and isolation does not apply outside of a hospital or mental health facility.
¶ 13 It is well established that when construing a statute, it must be read as a whole and no term should be isolated from the context of the statute. State v. Price , 2002 MT 229, ¶ 47, 311 Mont. 439, 57 P.3d 42. The intent of the Legislature is to be determined from the plain language of the statute. If the intent can be determined from the plain language of a statute, a court "may not go further and apply any other means of interpretation." Section 1-2-102, MCA ; State v. Boulton , 2006 MT 170, ¶ 12, 332 Mont. 538, 140 P.3d 482.
¶ 14 Title 53, chapter 21, part 1, MCA, comprehensively regulates State interaction with the seriously mentally ill. A reflection of the breadth of such regulation is the involvement at various points of the Department of Health and Human Services, the Mental Disabilities Board of Visitors, county attorneys, and district courts. See, e.g. , § 53-21-104, MCA (powers and duties of the Mental Disabilities Board); § 53-21-106, MCA (requiring the Department of Health and Human ***196 Services to certify "professional persons" in connection with treatment of the seriously mentally ill); § 53-21-114(1), MCA (requiring the county attorney to inform involuntarily detained or examined persons of constitutional rights within three days of detention or examination); § 53-21-116, MCA (district court's obligation to appoint counsel if a person alleged to be seriously mentally ill is unrepresented); § 53-21-121, MCA (county attorney's duties in connection with filing petition for commitment); § 53-21-122, MCA (district court's obligation to determine probable *703 cause when petition for commitment filed); § 53-21-127, MCA (district court's dispositional obligations); and § 53-21-129, MCA (county attorney's duties in connection with emergency detention). The statute also requires public provision of other costs associated with involuntary commitment, including transportation. Section 53-21-132, MCA.
¶ 15 Notwithstanding the comprehensive nature of Montana law in this area, the statutes provide no guidance regarding the manner of transportation of individuals committed, voluntarily or involuntarily. Section 53-21-113, MCA, requires a sheriff to transport voluntarily committed individuals if no one else is available. Section 53-21-132, MCA, requires counties to reimburse sheriff's officers for their transportation services.
¶ 16 Montana law does provide patients a statutory right to be free from physical restraint.
Patients have a right to be free from physical restraint and isolation. Except for emergency situations in which it is likely that patients could harm themselves or others and in which less restrictive means of restraint are not feasible, patients may be physically restrained or placed in isolation only on a professional person's written order that explains the rationale for the action. The written order may be entered only after the professional person has personally seen the patient concerned and evaluated the episode or situation that is alleged to call for restraint or isolation. Emergency use of restraints or isolation may not be for more than 1 hour, by which time a professional person must have been consulted and must have entered an appropriate order in writing. The written order is effective for no more than 24 hours and must be renewed if restraint and isolation are to be continued. Whenever a patient is subject to restraint or isolation, adequate care must be taken to monitor the patient's physical and psychiatric condition and to provide for the patient's physical needs and comfort. Physical restraint may not be used as punishment, for the convenience of the staff, or as a substitute for ***197 a treatment program.
Section 53-21-146, MCA.
¶ 17 J.J. asserts this statute applies. However, these considerations are inapplicable to the facts here. While transporting a seriously mentally ill individual, a law enforcement officer could not reasonably "monitor the patient's physical and psychiatric condition," or otherwise satisfy some of the statutory requirements. As written, § 53-21-146, MCA, does not contemplate the transportation of seriously mentally ill individuals committed by the State. Nothing in the plain language of the statute leads us to the conclusion that it applies to transportation.
¶ 18 J.J. points out that § 53-21-141, MCA, provides that the district court may make a specific order limiting or removing a legal right of a seriously mentally ill individual who has been involuntarily committed.
Unless specifically stated in an order by the court, a person involuntarily committed to a facility for a period of evaluation or treatment does not forfeit any legal right or suffer any legal disability by reason of the provisions of this part except as it may be necessary to detain the person for treatment, evaluation, or care.
Section 53-21-141, MCA. Clearly, a district court has the authority by statute to order specific limits that could be placed on the respondent's legal rights, which could contemplate a requirement that a defendant be transported in handcuffs.[1] However, the District Court's refusal to require that J.J. not be transported in handcuffs was not an abuse of discretion.
¶ 19 Montana law-enforcement officers owe the public a general duty to preserve the peace and protect the public from harm inflicted by third persons or other independent sources. Bassett v. Lamantia , 2018 MT 119, ¶ 2, 391 Mont. 309, 417 P.3d 299.
*704 Further, "public policy, as determined by the Legislature, our precedent, and general principles of negligence, supports finding that an individual, in this case an officer, owes a duty of care to a plaintiff directly injured by that individual's affirmative acts." Bassett , ¶ 24. In Paull v. Park Cnty. , 2009 MT 321, ¶ 33, 352 Mont. 465, 218 P.3d 1198, we noted that the State owes a duty of ordinary care to prisoners in its actual custody.
***198 Further, long distance transportation of multiple prisoners is more than just driving and is an inherently dangerous activity as a matter of law.[2] Paull , ¶ 22.
¶ 20 J.J. argues that there was no threat of harm to himself or others; therefore, the sheriff's deputy had no reason to restrain him in handcuffs during transportation to MSH. We disagree.
¶ 21 The District Court made findings that in the ten days prior to his transportation in the sheriff's vehicle, J.J. had been highly unstable. J.J.'s mental state had included manic episodes of raging at the hospital, making a death threat and expressing death wishes. Utsch and Powell both testified J.J. was easily distracted and was unable to comprehend the seriousness of the situation. Utsch testified that on May 23, 2016, the day of the hearing and transportation, J.J. was manic, delusional, and told him that he had recently been hearing his father's voice telling him to kill himself. It is not unreasonable to conclude that J.J. may have tried to run from the officer into traffic, attempted to grab at the officer or at the vehicle's controls, or attempted to or actually cause injury to himself, the officer, or the general public.
¶ 22 J.J.'s behavior on the day of the hearing and the ten days prior was unpredictable. The potential for serious injury or harm was high and foreseeable. Handcuffing J.J. during transportation was a necessary precaution to prevent J.J. from injuring himself or harming the sheriff's deputy or another motorist on the highway.
¶ 23 We hold that the District Court did not abuse its discretion when it failed to grant J.J.'s request not to be handcuffed in the sheriff's vehicle during transportation from the Gallatin County Courthouse to the Montana State Hospital.
CONCLUSION
¶ 24 The District Court ruled on J.J.'s motion to not be handcuffed and J.J.'s notice of appeal was sufficient. The District Court did not abuse its discretion when it denied J.J.'s request not to be handcuffed in the sheriff's vehicle during the transfer to the state hospital. Montana law does not preclude using handcuffs to transport a seriously mentally ill ***199 individual.
¶ 25 Affirmed.
We Concur:
LAURIE McKINNON, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.
Justice James Jeremiah Shea, specially concurring.
¶ 26 I concur with the Court's resolution of J.J.'s appeal. Section 53-21-146, MCA, does not apply to the transportation of seriously mentally ill individuals committed by the State. Opinion, ¶ 17. The applicable statute, as the Court correctly notes, is § 53-21-141, MCA. I write separately to emphasize that, although the record in this particular case supports the District Court's ultimate determination that J.J. was to be handcuffed during transport, § 53-21-141(1), MCA, would ordinarily require that an involuntarily committed individual not be restrained "[u]nless specifically stated in an order by the court...." In that respect, the District Court was incorrect when it determined that whether or not J.J. had to be restrained "goes above and beyond what I can order...." Opinion, ¶ 6. In fact, as *705 § 53-21-141, MCA, plainly states, the court is the only one that can order an involuntarily committed individual to be restrained during transport.
¶ 27 Section 53-21-141(1), MCA, provides:
Unless specifically stated in an order by the court, a person involuntarily committed to a facility for a period of evaluation or treatment does not forfeit any legal right or suffer any legal disability by reason of the provisions of this part except as it may be necessary to detain the person for treatment, evaluation, or care.
This statute is a guarantee of fundamental rights to involuntarily committed individuals "except as it may be necessary" to limit those rights for treatment, evaluation, or care. The extent to which it may be necessary to limit those rights in any particular case must be "specifically stated in an order by the court." In the absence of such an order, the involuntarily committed individual does not forfeit any legal right or suffer any legal disability-this would include the right to be free of restraints during transport.
¶ 28 The District Court in this case did not comply with § 53-21-141, MCA, when it wrongly concluded "I can't change the fact you have to be restrained with handcuffs in the car." Nevertheless, I concur with this Court's conclusion that the District Court did not abuse its discretion when it denied J.J.'s request not to be handcuffed in the sheriff's vehicle during the transfer to the state hospital because, for the reasons set forth at Opinion, ¶¶ 21-22, the record supported the ultimate determination that it was necessary to restrain J.J. during ***200 transport. This Court will affirm the district court when it reached the right result, even if it reaches the right result for the wrong reason. State v. Betterman , 2015 MT 39, ¶ 11, 378 Mont. 182, 342 P.3d 971.
¶ 29 For the foregoing reasons, I concur.

The Concurrence posits that § 53-21-141, MCA, requires a district court order to transport involuntarily committed individuals with any physical restraint. We disagree. The specific exception provided in the statute is addressed to the necessity of a court order "except as may be necessary to detain the person for treatment, evaluation, or care." Clearly that language encompasses the "care" needed to safely transport involuntarily committed individuals.

In Paull, we held a county or other governmental entity that contracts to have prisoners transported may be held vicariously liable for injuries caused by an independent contractor that provides prisoner transport services. Paull , ¶ 22. The State is strictly liable for any injury that results from prisoner transportation regardless of fault. Paull , ¶ 38.