
DA 20-0155

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 294

IN THE MATTER OF:

C.L.,

     A Youth.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDJ-18-048
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Chad Wright, Appellate Defender, Jeavon Lang, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

     Joshua Racki, Cascade County Attorney, Valerie M. Winfield, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  September 29, 2021

Decided:  November 16, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant C.L., a youth, appeals a December 24, 2019 order of the Montana Eighth Judicial District Court, Cascade County (Youth Court), which denied C.L.'s motion to dismiss the State's July 2, 2019 petition to revoke C.L.'s probation. The Youth Court later relied on the findings from its December 24, 2019 order to grant two dispositional orders: a January 16, 2020 dispositional order—which granted the State's July 2, 2019 petition to revoke C.L.'s probation and imposed a suspended sentence to the Montana Department of Corrections (DOC) for placement in a secure juvenile facility—and the Youth Court's subsequent July 30, 2020 dispositional order—which granted a second February 27, 2020 petition by the State to revoke C.L.'s probation and committed C.L. to Pine Hills Youth Correctional Facility (Pine Hills). As a result, C.L.'s consolidated appeal requests these two dispositional orders be vacated. We reverse, vacating the Youth Court's two dispositional orders and remanding this matter for an entry of order dismissing the State's July 2, 2019 and February 27, 2020 petitions to revoke C.L.'s probation.

¶2 C.L.'s consolidated appeal presents the following single issue for review:

*Did the Youth Court err when it revoked C.L.'s probation under a consent decree without C.L.'s Youth Court Petition having been reinstated?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On August 1, 2018, the State filed a youth court petition under § 41-5-1402, MCA, accusing then-13-year-old C.L. of one count of felony criminal mischief. The petition alleged that C.L. had broken several picture windows at a residence in Great Falls, Montana. C.L. denied committing the offense and the case was initially set for a jury trial.

2

However, C.L. and the State ultimately entered a consent decree under § 41-5-1501, MCA, which provided, among other conditions, that C.L. would obey all State and local laws, attend regular probation appointments, refrain from using drugs or alcohol, and be subject to random drug testing and searches. C.L. was to be on probation for one year.

¶4 On December 6, 2018, the Youth Court held a hearing on the consent decree and asked C.L. to "change [his] plea to true in order to finish up [and] . . . close the loop with this consent decree." In response, C.L. entered an admission of "true" to the State's allegations. On December 7, 2018, the Youth Court issued an order which approved the parties' consent decree, ordered that the youth court petition against C.L. be "suspended," and asserted that C.L. "shall be subject to the terms of the consent decree, pursuant to § 45-5-1501(1)(a), MCA."

¶5 On July 2, 2019, the State filed a petition to revoke C.L.'s probation (July 2019 petition), alleging that C.L. had consumed drugs and alcohol and had been cited for misdemeanor theft of alcohol. The State's July 2019 petition requested that C.L. be committed to Pine Hills. Notably, the State's petition to revoke C.L.'s probation did not seek to reinstate the State's previous youth court petition against C.L. Instead, the State's July 2019 petition requested that the Youth Court "proceed with disposition" under § 41-5-1512, MCA (titled "[d]isposition of youth in need of intervention or youth who violate consent adjustments"), and § 41-5-1513, MCA (titled "disposition—delinquent youth []").

¶6 On December 2, 2019, C.L. filed a motion to dismiss the State's petition, arguing that the State had not followed the proper procedure under the Montana Youth Court Act. Specifically, C.L. maintained that under the terms of § 41-5-1431(1), MCA (titled

3

"[p]robation revocation proceeding[s]"), probation revocation proceedings may only be initiated for youths that have been adjudicated as a "delinquent youth" or adjudicated as a "youth in need of intervention." Thus, because C.L. had entered an alternative disposition in lieu of adjudication—i.e., a consent decree—C.L. claimed that he was not an "adjudicated" youth and, therefore, probation revocation proceedings could not be initiated under § 41-5-1431, MCA. Instead, C.L. contended that, under the terms of § 41-5-1501(4), MCA (governing "[c]onsent decree[s] with petition[s]"), the correct procedure was for the State to reinstate the suspended youth court petition in response to C.L.'s alleged failures to comply with the consent decree.

¶7 The State opposed C.L.'s motion to dismiss, arguing a consent decree was akin to a deferred imposition of sentence in criminal cases involving adults. The State further argued that C.L. had admitted to the allegation of felony criminal mischief during the parties' consent decree hearing and, thus, the Youth Court had the authority to impose a disposition when the terms of the consent decree were violated. However, the State acknowledged that C.L. had entered a consent decree under § 41-5-1501, MCA, and that its petition to revoke C.L.'s probation was filed under § 41-5-1431, MCA.

¶8 On December 24, 2019, the Youth Court issued an order denying C.L.'s motion to dismiss. The Youth Court's order effectively adopted the State's argument and held that C.L.'s admission of "true" at the consent decree hearing constituted a "change of plea"— a term typically reserved for adult criminal proceedings. Due to C.L.'s supposed "change of plea," the Youth Court reasoned that it had "adjudicated [C.L.'s] guilt in the same way that it does in adult proceedings before it imposes a deferred imposition of

4

sentence," and that "[a]t that point, the proceedings for disposition were suspended *pending* a determination that [C.L.] had successfully completed the period of the consent decree." (Emphasis added.) As a result, the Youth Court claimed it had the authority to revoke C.L.'s probation. The Youth Court did not address C.L.'s argument that § 41-5-1501(4), MCA ("[c]onsent decree with petition"), provides the correct procedure that the State is obligated to follow when a youth violates the terms of his consent decree. Instead, the Youth Court's order relied upon *In re Appeal of Cascade Cnty. Dist. Ct.*, 2009 MT 355, ¶¶ 16-17, 353 Mont. 194, 219 P.3d 1255. However, *Cascade Cnty.* dealt with the statutory procedures the State may resort to when a youth violates the terms of a "consent adjustment" under § 41-5-1302, MCA—a similar, but statutorily distinct, procedure from that of a "consent decree" under § 41-5-1501, MCA.

¶9 On January 9, 2020, the Youth Court held an evidentiary hearing on the State's July 2019 petition to revoke C.L.'s probation. Again, C.L. objected that the State's recommended sentence of Pine Hills was not available as a possible disposition under a consent decree. However, the Youth Court denied C.L.'s objection and stated it did not "want to go around that horn again."

¶10 On January 16, 2020, the Youth Court issued a dispositional order finding that C.L. had violated the terms of his probation. The Youth Court concluded that C.L. was both a "delinquent [y]outh" and "serious juvenile offender" under the definitions provided in § 41-5-103, MCA (the definitional section of the Youth Court Act). The Youth Court's order committed C.L. "to the Montana Department of Corrections until age [] 18 or sooner released, for placement in a secure state Youth correctional facility[.]" Notably, the Youth

5

Court ordered this commitment "pursuant to §§ 41-5-1512(1)(c) and 41-5-1513(1)(b), MCA"—two statutes which, respectively, prescribe the procedures available to a youth court when a youth violates a "consent adjustment" and when a youth is formally adjudicated as a "delinquent youth." C.L. appealed this order on March 13, 2020, and asked the Youth Court to stay its imposition, which it did.

¶11 On February 27, 2020, the State filed a second petition to revoke C.L.'s probation (February 2020 petition), alleging C.L. had tested positive for marijuana and that the Great Falls Police Department found marijuana and drug paraphernalia during a search of C.L.'s residence. After conducting an evidentiary hearing on July 30, 2020, the Youth Court issued a dispositional order on that same date which revoked C.L.'s probation and committed C.L. to Pine Hills "until age [] 18, or sooner released." The record reflects that, at the time of C.L.'s commitment to Pine Hills in July of 2020, the formal petition against C.L. had never been reinstated and C.L. had never received an adjudication on the merits of the charge of criminal mischief.

¶12 On August 25, 2020, C.L. appealed the Youth Court's July 2020 dispositional order. As with its previous January 2020 dispositional order, the Youth Court stayed its imposition. On January 11, 2021, this Court consolidated C.L.'s two appeals. C.L.'s single argument in this consolidated appeal is that the Youth Court erred when it denied C.L.'s motion to dismiss because the youth court petition against C.L. was never reinstated, as required by the Youth Court Act. C.L. further notes that, should this Court decide that the Youth Court erred in denying C.L.'s motion to dismiss, both the Youth Court's January 2020 dispositional order and the Youth Court's July 2020 dispositional order must be

6

vacated on the grounds that the Youth Court would not have had the proper statutory authority to issue either of these orders.

**STANDARD OF REVIEW**

¶13 "This Court reviews a youth court's interpretation and application of the Youth Court Act for correctness." *Cascade Cnty.*, ¶ 10 (citing *In re K.D.K.*, 2006 MT 187, ¶ 15, 333 Mont. 100, 141 P.3d 1212). *See also In re T.H.*, 2005 MT 237, ¶ 35, 328 Mont. 428, 121 P.3d 541 (citations omitted). When construing an act of the legislature, that act must be read as a whole, and no term should be isolated from the context of the statute. *Eldorado Coop Canal Co. v. Hoge*, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836. The intent of the Legislature is to be determined from the plain language of the statute. *In re J.J.*, 2018 MT 184, ¶ 13, 392 Mont. 192, 422 P.3d 699. If the intent can be determined from the plain language of the statute, a court may not go further and apply any other means of interpretation. *In re J.J.*, ¶ 13 (citations omitted).

**DISCUSSION**

¶14 *Did the Youth Court err when it revoked C.L.'s probation under a consent decree without C.L.'s Youth Court Petition having been reinstated?*

¶15 C.L. argues that C.L. and the State were operating under a § 41-5-1501, MCA, "consent decree" and that the State was therefore subject to the procedures prescribed in § 41-5-1501(4), MCA. Due to the Youth Court's misinterpretation of the Youth Court Act, C.L. contends that the Youth Court did not have the authority to designate C.L. as a "delinquent youth" or commit him to Pine Hills. The State maintains that C.L.'s previous

7

admission to criminal mischief at the consent decree hearing authorized the Youth Court to impose its disposition.

¶16 In general, all youths facing criminal accusations in Montana must be adjudicated subject to the Youth Court Act, which is codified in Title 41, chapter 5, MCA. The Youth Court Act creates a statutory scheme separate from that of adult criminal prosecutions under Title 46, MCA, due to the unique goals of the juvenile justice system. When the language of the Youth Court Act is clear and unambiguous, youth courts must adhere to the procedures specifically provided in the Act's text. *See In re J.A.*, 2011 MT 132, ¶ 14, 361 Mont. 16, 255 P.3d 150 (citations omitted).

¶17 Under the Youth Court Act, proceedings can be either "formal" or "informal" depending on which section of the Montana Code those proceedings are initiated under. *See* § 41-5-1402, MCA (initiation of formal proceedings through a youth court petition); § 41-5-1302, MCA (initiation of informal proceedings through a "consent adjustment without petition"). In an informal proceeding under Title 41, chapter 5, part 13, MCA, no formal youth court petition is filed, and a youth may enter a "consent adjustment" with a juvenile probation officer. Section 41-5-1302(1), MCA. If a youth violates a consent adjustment, the available dispositions for a youth court are provided by § 41-5-1512, MCA.

¶18 Conversely, under a "formal proceeding"—which is initiated by the filing of a youth court petition—a youth has two options: (1) the youth may proceed to an adjudication under § 41-5-1502, MCA, which can be done before a jury, judge, or through the youth's own "valid admission" to the offenses contained in the youth court petition; or (2) the youth can enter into a special form of agreement uniquely available to youths known

8

as a "consent decree" under § 41-5-1501, MCA. Upon entering a consent decree, § 41-5-1501(1)(a), MCA, states that formal proceedings under the petition are "suspended" and the youth does not proceed to an adjudication. To enter a consent decree, § 41-5-1501(2), MCA, requires a youth to "admit[] guilt . . . and accept responsibility for" the offenses set forth in the youth court petition. However, this admission of guilt for the purposes of entering a consent decree is a *separate and different* procedure from admitting to an offense in a formal petition under § 41-5-1502(8), MCA, as a § 41-5-1502(8) admission waives the youth's right to a jury trial, while a § 41-5-1501(2) consent decree admission does not.

¶19 For an accused youth, the benefits of entering a consent decree are clear. Once a consent decree is reached, a youth's original youth court petition is suspended, and § 41-5-1501(5), MCA, further provides that a youth who complies with all the terms of a consent decree must have his suspended youth court petition "dismissed with prejudice" at the end of the consent decree period. Conversely, if a youth violates the terms of a consent decree, the correct procedure that a youth court must follow is provided by § 41-5-1501(4), MCA, which states:

> [I]f the youth fails to fulfill the expressed terms and conditions of the consent decree, the petition under which the youth was continued under supervision *may be reinstated* in the discretion of the county attorney in consultation with probation services. *In the event of reinstatement*, the proceeding on the petition must be continued to conclusion as if the consent decree had never been entered.

(Emphasis added.) A review of the Youth Court Act in its totality establishes that reinstatement of the petition under § 41-5-1501(4), MCA, is the sole disposition available to the State when a youth violates the terms of a consent decree. Importantly, commitment

9

of a youth to the DOC for placement in a youth correctional facility is *not* immediately available to the State when operating under a consent decree; instead, the State must first reinstate the petition and then "proceed[] on the petition . . . to conclusion as if the consent decree had never been entered." Section 41-5-1501(4), MCA.

¶20 Here, the State was required by § 41-5-1501(4), MCA, to move to reinstate its original August 2018 youth court petition against C.L. Instead, upon learning C.L. had violated the terms of his consent decree, the State filed a petition to revoke probation under § 41-5-1431, MCA, without ever moving to reinstate the original petition. C.L. was correct when he objected to the way his case was proceeding and the Youth Court erred in its December 2019 order when it denied C.L.'s motion to dismiss.

¶21 In particular, the Youth Court's decision was premised upon two main errors.–First, the Youth Court incorrectly reasoned that when C.L. entered an admission of "true" at the consent decree hearing, this constituted an admission to the formal petition which waived C.L.'s right to a jury trial and gave the Youth Court the authority to "adjudicate[] [C.L.'s] guilt" and order a DOC commitment. Here, the Youth Court mistakenly confused C.L.'s admission of "true"—which is statutorily required to enter into a consent decree under § 41-5-1501(2), MCA—with that of a formal "valid admission" to the charges contained in a youth court petition under § 41-5-1502(8), MCA.

¶22 While § 41-5-1501(2), MCA, requires all youths entering a consent decree to "admit[] guilt . . . and accept responsibility for" the allegations contained in a youth court petition before formal proceedings on that petition are suspended, the youth does not waive their right to later deny the offenses in the petition and invoke his right to a jury trial under

10

§ 41-5-1502(1), MCA, in the event the petition is reinstated. Conversely, a "valid admission" to the offenses under § 41-5-1502(8), MCA, constitutes a waiver of the youth's right to a jury trial, thereby allowing a youth court to adjudicate the youth as a "delinquent youth" and commit that youth to the DOC. Here, the Youth Court mistakenly treated C.L.'s admission of "true" as a "valid admission" to the felony charges in his youth court petition under § 41-5-1502(8), MCA, when the context fully indicates that this was an admission for the purposes of entering a consent decree under § 41-5-1501(2), MCA. C.L. made this admission at the December 2018 hearing that was specifically called for the purpose of approving C.L.'s consent decree and suspending C.L.'s youth court petition. The record further reflects that, in asking C.L. to enter this admission, the Youth Court made no mention of whether this admission would involve the forfeiture of any of C.L.'s rights as an accused youth. As a result, contrary to the Youth Court's assertion, C.L.'s admission of "true" was made under § 41-5-1501(2), MCA, meaning that C.L. retained his right to deny the allegations under § 41-5-1502(1), MCA, and to receive a jury trial if formal proceedings against him were reinstated.

¶23 The Youth Court additionally mischaracterized the proceedings as simply "adjudicat[ing] [C.L.'s] guilt in the same way that it does in adult proceedings before it imposes a deferred imposition of sentence." This incorrect analogy led the court to assume that formal proceedings suspended by a consent decree are resumed automatically if a youth violates the terms of his or her consent decree—even though § 41-5-1501(4), MCA, specifically requires a motion by the State to reinstate formal proceedings. The Youth Court Act's express purpose is to provide youth offenders with a separate statutory process

11

which reflects the unique treatment of youth offenders versus adult offenders. *See In re S.M.K.-S.H.*, 2012 MT 281, ¶ 28, 367 Mont. 176, 290 P.3d 718 (recognizing that a youth in the youth court system is "not similarly situated [to an adult] with respect to Montana's sentencing laws"). Indeed, the availability of a "consent decree" is one of several procedures unique to the juvenile justice system; as such, youth courts must interpret these procedures in accordance with text of the Youth Court Act and avoid interpretive analogies with the adult procedures present in Title 46 of the Montana Code. *See In re T.M.R.*, 2006 MT 246, ¶ 16, 334 Mont. 64, 144 P.3d 809 (noting that it was "not appropriate" to apply Title 46 adult criminal statutes to proceedings under the Youth Court Act unless expressly permitted by the Act).

¶24 The second main error in the Youth Court's decision to deny C.L.'s motion to dismiss was its reliance on *Cascade Cnty.* and, by extension, § 41-5-512, MCA. In *Cascade Cnty.*, ¶ 16, this Court held that "[b]y permitting the youth court to enforce the violation of informal *consent adjustments* without requiring a petition . . . [,] § 41-5-1512, MCA, has a reasonable and rational statutory relation to the express statutory purposes of the Youth Court Act." (Emphasis added.) By relying on this language from *Cascade Cnty.*, the Youth Court confused the statute for enforcing violations of a consent *adjustment*, § 41-5-1512, MCA, with the statute for enforcing violations of a consent *decree*, § 41-5-1501(4), MCA. Section 41-5-1512, MCA, which this Court addressed in *Cascade Cnty.*, is the Youth Court Act's exclusive statutory provision for enforcing violations of a consent *adjustment*—an informal proceeding that does not require filing a formal petition. Conversely, § 41-5-1501(4), MCA, which *Cascade Cnty.* does not discuss,

12

is the Youth Court Act's exclusive statutory provision for enforcing violations of a consent *decree*, which involves the suspension of formal proceedings after a formal petition has already been filed. The agreement between C.L. and the State, which was approved by the Youth Court, is clear that it was approved as a "consent decree" under § 41-5-1501, MCA, which suspended the youth court petition that the State had originally filed against C.L.[1] Thus, neither § 41-5-1512, MCA, nor *Cascade Cnty.* was applicable to C.L.'s case, as a consent adjustment is a statutorily distinct procedure from that of a consent decree. Instead, the text of § 41-5-1501(4), MCA, governs, and the State was required to move to reinstate C.L.'s youth court petition if it wanted the dispositional option of a DOC commitment as provided in § 41-5-1513, MCA.

¶25 In continuation of this error, in its January and July 2020 dispositional orders, the Youth Court again cited its discretion to issue dispositional commitments under § 41-5-1512, MCA (titled "disposition of youth in need of intervention or youth who violate consent adjustments"), and, furthermore, invoked its authority to commit C.L. to the DOC under § 41-5-1513, MCA (titled "disposition—delinquent youth []"). However, neither statute was applicable in C.L.'s case. First, although § 41-5-1501(1)(a), MCA, requires a consent decree to conform to the "procedures and dispositions specified in [§§] 41-5-1302 through 41-5-1304 relating to consent adjustments"—none of which, we

---

[1] In addition to the parties' agreement being titled a "Consent Decree," clear evidence that the parties' agreement was indeed intended to function as a consent decree under § 41-5-1501, MCA, is provided on the final page of the agreement, which quotes the language of § 41-5-1501(4), MCA, nearly verbatim, stating that "[i]f the Youth violates any of the conditions or directions of this Consent Decree, the County Attorney may, in his discretion reinstate the petition suspended by this Decree and proceed against the youth as if this Consent Decree had never been entered."

note, provides that a youth may be committed to the DOC for placement at Pine Hills—this language only pertains to what may be *included* in the consent decree and does not establish procedures or dispositions that may be imposed when a consent decree is alleged to have been violated. Instead, the exclusive mechanism to address alleged violations of a consent decree is set forth in subsection (4) of § 41-5-1501, MCA. As we have noted, § 41-5-1501(4), MCA, specifically provides that "if [a] youth fails to fulfill the expressed terms and conditions of the consent decree, the petition under which the youth was continued under supervision may be reinstated in the discretion of the county attorney in consultation with probation services." Second, the Youth Court's dispositional orders also did not have any authority under § 41-5-1513, MCA, to designate C.L. as a "delinquent youth" and commit him to Pine Hills. By definition, a youth who is subject to a § 41-5-1501, MCA, consent decree has had formal proceedings against him suspended. As a result, that youth cannot be adjudicated as a "delinquent youth" or committed to any youth correctional facility until *after* the State reinstates formal proceedings and continues through to adjudication and disposition under the relevant statutes.

¶26 Here, the Youth Court's December 2019 order denying C.L.'s motion to dismiss and its January and July 2020 dispositional orders contained the same singular error; specifically, under § 41-5-1501(4), MCA, the State was required to move to reinstate its youth court petition against C.L. if it sought to address violations of C.L.'s consent decree. The Youth Court's error resulted in prejudice to C.L., as it led to C.L.'s commitment to Pine Hills without any actual § 41-5-1502(8), MCA, admission of guilt by C.L. and without an adjudication of the merits of his criminal mischief charge. As a result, we reverse C.L.'s

14

commitment to Pine Hills and remand this case to the Youth Court for further proceedings consistent with the Youth Court Act's directives governing consent decrees.

## CONCLUSION

¶27 The Youth Court erred when it denied C.L.'s motion to dismiss the State's July 2019 petition to revoke C.L.'s probation, as the State failed to move to reinstate C.L.'s original youth court petition. The Youth Court failed to follow the appropriate statutory procedure for a violation of a consent decree, as prescribed by the Youth Court Act, § 41-5-1501(4), MCA. Accordingly, in the absence of the formal reinstatement of C.L.'s original youth court petition, the District Court did not have statutory authority to issue its January and July 2020 dispositional orders.

¶28 We reverse, vacating the Youth Court's two dispositional orders, and remand for an entry of order dismissing the State's July 2019 and February 2020 petitions to revoke probation.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

15